## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF WYOMING

LHB VENTURES LLC,
on behalf of themselves and a class of
similarly situated persons,

              Plaintiffs,

v.

SHELL TRADING (US) COMPANY,
FIRST INTERSTATE BANK, and
BLACK BEAR OIL CORPORATION,

              Defendants.

Civil Action No.

---

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

---

Plaintiff LHB Ventures LLC ("LHB Ventures"), on behalf of itself and all other persons similarly situated, as defined below, for its class action complaint against Defendants Shell Trading (US) Company ("Shell Trading"), First Interstate Bank, and Black Bear Oil Corporation ("Black Bear") (collectively "Defendants"), allege as follows:

### SUMMARY

1.     This class action concerns the Defendants' past and ongoing violations of the Wyoming Royalty Payment Act ("WRPA"), Wyo. Stat. Ann. §§ 30-5-301 *et seq*., and their continuing breaches of their payment obligations to payees regarding oil and gas products produced from wells located in Wyoming, based upon: (1) the Defendants' failures to pay the eighteen percent statutory interest which the Defendants have owed on untimely, or "late," owner payments owed on the sale of oil and gas production to those interest owners legally entitled to such payments, as required under Sections 30-5-301(a) and 30-5-303(a) of the WRPA; (2)

Defendants' failures to comply with the applicable information reporting requirements to interest owners set forth in Section 30-5-305(b) of the WRPA, including Defendants' failure to pay the $100 per month amounts to the royalty and overriding interest owners who were subject to the Defendants' failures to comply with the WRPA Section 30-5-305(b)'s information reporting requirements, pursuant to Section 30-5-303(c) of the WRPA; and (3) Defendants' breaches of their royalty payment obligations to lessors and overriding royalty interest owners, based upon the Defendants' unauthorized and improper deduction of various costs from the selling price of oil produced from Wyoming wells in which lessors and overriding royalty owners have an ownership interest, in the Defendants' calculation and payment of royalties paid to the affected lessors and overriding royalty owners.

2.      Section 30-5-301 requires oil purchasers who have entered into arrangements with lessees or operators of Wyoming wells to pay all persons entitled to a portion of the proceeds derived from the sale of oil produced from Wyoming wells "commencing not later than six (6) months after the first day of the month following the date of first sale and thereafter not later than sixty (60) days after the end of the calendar month within which subsequent production is sold, unless other periods or arrangements for the first and subsequent payments are provided for in a valid contract with the person or persons entitled to such proceeds."

3.      On information and belief, with respect to all of the proceeds received on the sale of oil produced from Wyoming wells as to which Shell Trading or First Interstate Bank has made payments to persons who have a royalty, overriding royalty or other ownership interest in Wyoming wells since February 9, 2018, Defendant Shell Trading has entered into arrangements under which Shell Trading has assumed the operator's or the lessee's obligations to make payments to the persons who have such ownership interests in the Wyoming wells, and to whom

Shell Trading or First Interstate Bank have made interest owner payments on oil produced by operators from Wyoming wells, and purchased by Shell Trading.

4.      When Shell Trading, as the purchaser of oil produced from Wyoming wells in which various persons have ownership interests, has failed to meet the above-referenced payment deadlines in its payment of oil proceeds to the above-referenced interest owners, Shell Trading is required by law to pay the persons legally entitled to such proceeds statutory interest at a rate of eighteen percent per annum, pursuant to Section 30-5-303(a) of the WRPA. The same obligation extends to interest owner payments made by Defendant First Interstate Bank, because the obligation to pay the eighteen percent statutory interest on late payments extends to any "other party legally responsible" for interest owner payments to persons who have ownership interests in Wyoming wells, and to whom First Interstate Bank made late payments related to oil purchased by Shell Trading which was produced from wells located in Wyoming.

5.      At various times since February 9, 2018, Defendants have failed to pay LHB Ventures and the other members of the defined Subclasses the interest owner payments to which owners have been entitled within the applicable WRPA statutory deadlines as set forth in Section 30-5-301 of the WRPA, and instead have made late payments to such persons, or have failed to make payments in any respect. When Defendants have made such late payments, Defendants have failed to pay LHB Ventures and the defined Subclass members the eighteen percent per annum statutory interest on such late payments which are related to oil produced in Wyoming and, in violation of Section 30-5-301 of the WRPA.

6.      In their payments to LHB Ventures and other members of the Subclass defined below, Defendants have consistently underpaid the amount of oil  royalties and oil overriding royalties owed to such persons, because Defendants have deducted various "costs of production,"

3

as defined in the WRPA, in their payment of oil royalties and oil overriding royalties to such persons, in violation of their royalty and overriding royalty payment obligations, which have included the unauthorized deduction of various post-production costs, and other costs, in their payment of royalties to the affected owners of royalty and overriding royalty interests, in contradiction to the applicable provisions of the WRPA, which controls the Defendants' royalty payment obligations to LHB Ventures and the other members of the defined Subclasses on the sale of oil produced from the wells in which the Subclass members have an interest.

7.     In addition to  the Defendants' failure to pay the required statutory 18 percent interest on late payments, the interest owner payments made by Defendants to LHB Ventures and other members of the defined applicable Subclasses, Defendants have consistently failed to comply with the information reporting requirements set forth in Section 30-5-305(b) of the WRPA, in numerous respects, thus making Defendants liable for the $100 per month payment to Plaintiffs and the other members of the defined Subclasses, pursuant to Section 30-5-303(c) of the WRPA.

## PARTIES

8.     Plaintiff LHB Ventures is a limited liability company which was established and organized under the laws of the State of Colorado, which has its principal place of business in the State of Colorado. For purposes of the applicable provision of the Class Action Fairness Act, Plaintiff LHB Ventures is therefore deemed to be a citizen of the State of Colorado.

9.     Defendant Shell Trading is a corporation organized under the laws of the State of Delaware which has its principal place of business in the State of Texas. For purposes of the applicable provision of the Class Action Fairness Act, 28 U.S.C. § 1332(d), Defendant Shell Trading is therefore deemed to be a citizen of the States of Delaware and Texas. On information and belief, Shell Trading does not operate any wells located in the State of Wyoming, but rather

4

entered into various legal arrangements under which Shell Trading assumed payment obligations to certain persons legally entitled to proceeds attributable to the sale of oil produced from various wells located in the State of Wyoming.

10.    On information and belief, Defendant First Interstate Bank is a banking corporation chartered under the laws of the State of Montana and whose principal place of business is located in the State of Montana. For purposes of the applicable provision of the Class Action Fairness Act, 28 U.S.C. § 1332(d), Defendant First Interstate Bank is therefore deemed to be a citizen of the State of Montana. Although First Interstate Bank does not operate any wells located in the State of Wyoming, it has entered into a legal arrangement with Shell Trading under which it assumed the payment obligations to those persons legally entitled to proceeds attributable to the sale of oil and gas produced from various wells.

11.    Defendant Black Bear is a corporation organized under the laws of the State of Nevada which has its principal place of business in the State of Nevada. For purposes of the applicable provision of the Class Action Fairness Act, 28 U.S.C. § 1332(d), Defendant Black Bear is therefore deemed to be a citizen of the State of Nevada. Black Bear is a working interest owner and the operator of approximately 160 wells located in the State of Wyoming, and makes royalty, overriding royalty, and other ownership interest payments to LHB Ventures and the other members of the applicable Subclasses defined below on oil and gas produced by Black Bear in the State of Wyoming.

## JURISDICTION AND VENUE

12.    This Court has personal jurisdiction over Defendants because Defendants conduct or have conducted substantial business activities in the State of Wyoming,  and the conduct giving rise to the claims asserted in this Complaint relate to real property located in Wyoming and events

that occurred in Wyoming.

13.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because: (a) Plaintiffs have brought this case as a class action; (b) the class contains at least one Class member who is a citizen of a state different from the states where the Defendant are deemed to be a citizen; and (c) the amount in controversy for the claims of the proposed Class members against the Defendants exceeds the sum of $5,000,000, exclusive of interest and costs.

14.     Venue for this action is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in Wyoming.

## BACKGROUND FACTS

15.     Through a series of conveyances effective November 1, 2019, September 1, 2020, and January 1, 2021, Plaintiff LHB Ventures acquired certain "overriding royalty" interests, as defined in the WRPA in various oil and gas leases covering lands located in the State of Wyoming, in which Defendant Black Bear owns the lessee's interest. (the "Black Bear Leases").

16.     Defendant Black Bear is the "Lessee" to the Black Bear Leases, as defined in Section 30-5-304(a)(ii) of the WRPA. Black Bear is also the "Operator" of the oil and gas wells drilled pursuant to the Black Bear Leases as defined in Section 30-5-304(a)(iii) of the WRPA.

17.     For some of the oil and gas wells drilled subject to the Black Bear Leases, LHB Ventures is owed and has received overriding royalties from Defendant Black Bear. (the "Black Bear Wells"). Black Bear is responsible for the proper determination, calculation, distribution, and payment of overriding royalties due and owing to LHB Ventures on oil and gas produced from the Black Bear Wells.

18.     Through a series of conveyances effective November 1, 2019, September 1, 2020,

October 1, 2020, and January 1, 2021, LHB Ventures acquired certain "overriding royalty" and "royalty" interests, as defined in the WRPA in various oil and gas leases covering lands located in the State of Wyoming, in which Matrix Production Company is the lessee. (the "Matrix Leases").

19.    Matrix Production Company is the "Lessee" to the Matrix Leases, as defined in Section 30-5-304(a)(ii) of the WRPA. Matrix Production Company is also the "Operator" of the oil and gas wells drilled pursuant to the Matrix Leases as defined in Section 30-5-304(a)(iii) of the WRPA.

20.    For <u>some</u> of the oil and gas wells drilled subject to the Black Bear Leases and <u>all</u> the wells drilled subject to the Matrix Leases, Defendant Shell Trading has assumed Black Bear's and Matrix Production Company's responsibility for determining, calculating, distributing, and paying the royalty and overriding royalties due and owing to LHB Ventures on the oil produced from such wells. (the "Shell Trading Wells").

21.    Effective May 7, 2009, Defendant Shell Trading entered into a Royalty Escrow Agreement with Defendant First Interstate Bank. The stated purpose of the Royalty Escrow Agreement was to provide "a vehicle for the protection and promotion of the interests of individuals or entities entitled to proceeds derived from the sale of oil, gas, or related hydrocarbons as contemplated and required by W.S. 30-5-301 through 30-5-303." Under the terms of the Royalty Escrow Agreement, Shell Trading was required to deposit into an escrow account, funds that are owed to "owners of any and all working, royalty, or overriding royalty interest or any other right or interest in the mineral estate of producing properties . . ., which owners or interest has not been determined and confirmed by the executed division order or similar document or make a claim for underpayment."

22.    Under the terms of the Royalty Escrow Agreement, once a working, royalty, or

overriding royalty interest owners' ownership interest in the funds is established, Defendant First Interstate Bank is obligated to remit the escrowed funds to such owners.

## PROVISIONS OF THE WYOMING ROYALTY PAYMENT ACT

23.     The WRPA is a remedial statute that is liberally construed to achieve the remedial purpose of preventing "oil producers from retaining other people's money for their own use." *Moncrief v. Harvey*, 816 P.2d 97, 105 (Wyo. 1991).

24.     To further this stated purpose, the WRPA imposes strict timeframes for the payment of oil and gas proceeds to those persons legally entitled thereto, and provides in pertinent part:

> The **proceeds** derived from the sale of production from any well producing oil, gas or related hydrocarbons in the state of Wyoming **shall be paid** to all persons legally entitled thereto, except as hereinafter provided, commencing **not later than six (6) months after the first day of the month following the date of first sale and thereafter not later than sixty (60) days after the end of the calendar month within which subsequent production is sold** . . .

Wyo. Stat. Ann. § 30-5-301(a) (emphasis added).

25.     When the party responsible for remitting the proceeds to those persons legally entitled thereto fails to meet these timeframes, and therefore makes "late payments," the WRPA provides, in pertinent part:

> **Any lessee or operator**, purchaser or other party **legally responsible for payment who violates the provisions of this article is liable** to the person or persons legally entitled to proceeds from production **for the unpaid amount of such proceeds, plus interest at the rate of eighteen percent (18%) per annum** on the unpaid principal balance from the due date specified in W.S. 30-5-301(a).

Wyo. Stat. Ann. § 30-5-303(a) (emphasis added).

26.     The WRPA contains a "good faith" exception for a payor to avoid the 18% per annum interest on unpaid or late payments, which provides:

> [i]n instances where payment cannot be made for any reason within the time limits specified in W.S. 30-5-301(a), the lessee or operator, purchaser or other party legally responsible for payment shall deposit all proceeds credited to the eventual interest owner to an escrow account in a federally insured bank or savings and loan institution in Wyoming, . . ."

Wyo. Stat. Ann. § 30-5-302.

27.     The same timelines in Wyo. Stat. Ann. § 30-5-301(a) apply to the escrow requirement of Wyo. Stat. Ann. § 30-5-302, and when payors, such as the Defendants, fail to timely escrow proceeds, that failure makes them "liable for interest pursuant to the statute." *Moncrief*, 816 P.2d at 105.

28.     To trigger the "good faith" exception provided in Wyo. Stat. Ann. § 30-5-302, the payor must demonstrate that a "good faith" dispute as to the determination of the person legally entitled to an interest in the proceeds from production.

29.     The WRPA contains no notice or demand requirements before an owner is entitled to statutory interest.

30.     In addition to its requirements regarding <u>when</u> payments are remitted, the WRPA sets forth certain requirements regarding <u>how</u> payments should be calculated.  Wyo. Stat. Ann. § 30-5-305(a) provides, in pertinent part, that "[u]nless otherwise expressly provided for by specific language in an executed written agreement, 'royalty,' 'overriding royalty.' . . . shall be interpreted as defined in W.S. 30-5-304."

31.     Under Wyo. Stat. Ann. § 30-5-304(a), "royalty" and "overriding" royalty" interest owners are entitled to receive payments attributable to their oil and gas interests "free of the costs of production."

32.     "Costs of production" is defined in Wyo. Stat. Ann. § 30-5-303(a)(vi) as:

> **all costs** incurred for  exploration,  development,  primary  or

enhanced recovery and abandonment operations including, but not limited to lease acquisition, drilling and completion, pumping or lifting, recycling, **gathering**, compressing, pressurizing, heater treating, dehydrating, **separating**, **storing or transporting the oil to the storage tanks** or the gas into the market pipeline. "Costs of production" does not include the reasonable and actual direct costs associated with transporting the oil from the storage tanks to market or the gas from the point of entry into the market pipeline or the processing of gas in a processing plant[.]

Wyo. Stat. Ann. § 30-5-304(a)(vi).(emphasis added).

33.     The WRPA further provides for disclosure requirements on check stubs sent to all interest owners.  Wyo. Stat. Ann. § 30-5-305(b).

34.     Specifically, the WRPA  requires that "[w]henever payment is made for oil and gas production to an interest owner, all of the following information must be included and labeled on the check stub or on an attachment to the form of payment, . . (vi) An itemized list of any other deductions or adjustments; [and] (ix) The owner's share of the total value of sales prior to any deductions."  Wyo. Stat. Ann. § 30-5-305(b)(vi) and (ix).

### SUBCLASS I
### FACTUAL AND CLASS ALLEGATIONS

### A.  *BLACK BEAR'S UNDERPAYMENT OF OIL ROYALTIES UNDER THE WRPA.*

35.     There is no provision in any of the instruments under which Black Bear pays royalties or overriding to LHB Ventures which contains "specific language" which expressly negates the application of the WRPA's royalty and overriding royalty payment requirements, with respect to the prohibition of deducting "costs of production" as defined in the WRPA.

36.     Under the WRPA, Black Bear is legally obligated to calculate and pay oil royalties and overriding royalties associated with the Black Bear Wells to LHB Ventures, free of the costs of production, as defined in Wyo. Stat. Ann. § 30-5-304(a)(vi).

37.     On information and belief, at various times since October 2021, Black Bear has

10

underpaid LHB Ventures the amounts of oil royalty and overriding royalties owed to it based upon Black Bear's unlawful deduction of the costs of gathering, separating, storing, and transporting the oil produced from the Black Bear Wells to the storage tanks, and other costs of production as defined in the WRPA ("prohibited costs").

38.    Although the check stubs prepared by Black Bear and sent to LHB Ventures did not expressly reflect Black Bear's deduction of the prohibited costs, the Energy Information Administration publishes a monthly index for "Wyoming Crude Oil First Purchase Index Price" which reflects the weighted average wellhead price for oil produced and sold in the State of Wyoming during a given month.

39.    The price used by Black Bear in the calculation and payment of oil royalties owed to LHB Ventures is consistently less than the posted "Wyoming Crude Oil First Purchase Index Price."

40.    On information and belief, this discrepancy occurs because Black Bear has improperly deducted the prohibited costs in its calculation and payment of oil royalties owed to LHB Ventures and the other members of Subclass I, as defined herein.

41.    Black Bear is the lessee under numerous oil and gas leases with hundreds of lessors and overriding royalty interest owners which, like Black Bear's agreements with LHB Ventures, do not contain any specific language expressly permitting Black Bear to deduct the above-referenced prohibited costs in its calculation of royalties and overriding royalties paid to those persons legally entitled to such proceeds.

42.    On information and belief, Black Bear also deducted the above described prohibited costs in the calculation and payment of oil royalties and oil overriding royalties owed to the other members of the designated Subclass.

**B.  *BLACK BEAR'S FAILURE TO DISCLOSE ITS IMPROPER DEDUCTIONS UNDER THE WRPA.***

43.     The WRPA also obligates Black Bear to provide certain information to LHB Ventures and the other Subclass I members whenever Black Bear makes a royalty or overriding royalty payment to them. Specifically, Section 30-5-305(b)(vi) of the WRPA obligates Black Bear to provide an itemized list of any deductions or adjustments to LHB Ventures' and the other Subclass Members' payments.

44.     Black Bear uses a royalty payment statement (a/k/a "check stub") form that is common to LHB Ventures and all of Subclass I members. The check stubs prepared and sent by Black Bear to LHB Ventures and the other Subclass I members in regard to Black Bear's royalty and overriding royalty payments on oil produced in Wyoming have not included or labeled all of the deductions or adjustments that Black Bear has made to LHB Ventures' and the other Subclass I members' royalty and overriding royalty payments. For example, and without limitation, Black Bear has failed to disclose on its check stubs that Black Bear has deducted certain "costs of production" in calculating payment to LHB Ventures and the other Subclass I members. Black Bear has also failed to provide Subclass I members' share of the total value of oil sales prior to the deduction of prohibited costs.

45.     Black Bear's acts and omissions in regard to the information it provides on its check stubs constitute repeated violations of W.S. §30-5-305(b). Pursuant to W.S. §30-5-305(c), LHB Ventures and each of the Subclass I members are entitled to recover from Black Bear $100.00 per month for each month that a complete reporting was not provided to them.

46.     Pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), LHB Ventures brings this action on behalf of itself and the following subclass defined as follows:

         All non-excluded persons or entities who: (1) are or have been a

lessor under an oil and gas lease with Black Bear covering any well located in the State of Wyoming, or are or have been an overriding royalty interest owner under an overriding royalty agreement with Black Bear covering any well located in the State of Wyoming, which oil and gas lease or overriding royalty agreement does not contain specific language which expressly permits Black Bear to deduct costs of production, as defined in the WRPA; (2) at any time since February 9, 2018, have been paid royalties associated with oil produced by Black Bear in which Black Bear has deducted any of the above-referenced costs of production in its calculation of such royalties; and (3) whose check stubs did not reflect the deduction of costs of production in the calculation and payment of oil royalties and oil overriding royalties.

Excluded from the Class are: (1) Black Bear, its affiliates, predecessors, employees, officers, and directors; and (2) agencies, departments, or instrumentalities of the United States of America.

(the "Black Bear Deductions Subclass" or "Subclass I").

47.    On information and belief, there are more than 100 members of Subclass I, and joinder of such persons in this class action is therefore impractical.

48.    There are questions of fact and law common to the claims of the members of Subclass I, which include:

a.    Whether Black Bear has deducted one or more of the above-referenced prohibited costs of production in its calculation of oil royalties and overriding royalties paid to the members of Subclass I;

b.    Whether Black Bear has breached its oil royalty and overriding royalty payment obligations to the members of Subclass I by deducting one or more of the above-referenced prohibited costs of production in its calculation of oil royalties and overriding royalties paid to the members of Subclass I;

c.    Whether Black Bear's deduction of any of the above-referenced prohibited costs of production in its calculation and payment of oil royalties and overriding royalties to the members of Subclass I is prohibited under the express provisions of Wyo. Stat. Ann. § 30-5-304(a)(v), (a)(vi), (a)(vii), and § 30-5-305(a), which are incorporated into the oil and gas leases and overriding royalty agreements at issue;

d.    Whether Black Bear's uniform policies and practices relating to the preparation of royalty and overriding royalty payment statements (a/k/a check stubs) sent to LHB Ventures and the other members of Subclass I constitute a violation of Section 30-

5-305(b) of the WRPA; and

    e.   Whether Black Bear breached its obligations under Section 30-5-305(b) of the WRPA by not properly including and labeling, on Black Bear's check stubs, all deductions taken from LHB Ventures and the other Subclass I members' royalty and overriding royalty payments.

49.    LHB Ventures statutory WRPA claims against Black Bear are typical of the other Subclass I members' claims against Black Bear, because each Subclass I member's claim against Black Bear is identical to LHB Ventures claim against Black Bear.

50.    LHB Ventures will fairly and adequately protect the interests of the members of Subclass I.  LHB Ventures is represented by attorneys who are skilled and experienced in royalty underpayment and late payment class action litigation, and LHB Ventures does not have a conflict of interest with any other Subclass I member regarding the claims at issue.

51.    The questions of fact and law which are common to the claims of the members of Subclass I predominate over any questions of fact or law which may affect only individual members of Subclass I.

52.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

### SUBCLASS I
### FIRST CLAIM FOR RELIEF
**(Black Bear's Breach of its Royalty and Overriding Royalty Payment Obligations Under the Wyoming Royalty Payment Act)**

53.    The preceding allegations of this Class Action Complaint are fully incorporated by reference.

54.    At various times since February 9, 2018, Black Bear has breached its oil royalty and overriding royalty oil payment obligations to LHB Ventures and the other members of Subclass I by deducting one or more of the following costs in its calculation of oil royalties and overriding royalties paid to the LHB Ventures and the other members of Subclass I: gathering,

separating, trucking, and transporting the oil to the storage tanks, and other costs of production as defined in the WRPA.

55.     As a direct result of Black Bear's breach of its oil royalty and oil overriding royalty payment obligations, as described above, LHB Ventures and the other members of Subclass I have sustained substantial damages.

56.     Based upon Black Bear's failure to pay the LHB Ventures and the other members of Subclass I the correct amount of oil royalties and overriding royalties which they are owed, LHB Ventures and the other members of Subclass I are entitled to recover eighteen percent per annum on the underpaid royalties, pursuant to Wyo. Stat. Ann. §§ 30-5-301(a) and 30-5-303(a), and are also entitled to recover reasonable attorneys' fees and costs pursuant to Wyo. Stat. Ann. § 30-5-303(b).

**SECOND CLAIM FOR RELIEF**
**(Black Bear's Failure to Disclose its Deduction of Costs of Production**
**Under § 30-5-305)**

57.     The preceding allegations of this Class Action Complaint are fully incorporated by reference.

58.     Black Bear has knowingly charged "costs of production" to LHB Ventures and the other members of Subclass I in the calculation and payment of oil royalties in violation of Section 30-5-305 WRPA.

59.     Black Bear has knowingly violated the WRPA by failing to provide to LHB Ventures and the other members of Subclass I a true and complete disclosure of information as required by Section 30-5-305(b) of the WRPA.

60.     LHB Ventures and other members of Subclass I have been damaged as a result thereof, and are entitled to statutory payments in the amount of $100.00 per month for each month

that complete reporting was not provided by Black Bear, as provided in Section 30-5-303(c), and any other relief deemed appropriate by the Court.

## THIRD CLAIM FOR RELIEF
### (Declaratory Judgment)

61.     The preceding allegations of this Class Action Complaint are fully incorporated by reference.

62.     A controversy exists between LHB Ventures and the other members of Subclass I and Black Bear regarding Black Bear's obligation to pay oil royalties and overriding royalties to LHB Ventures and the other members of Subclass I without deducting the above-referenced prohibited costs on future royalty payments made by Black Bear after the date of final judgment in this case ("future royalty payments"), based upon the clear likelihood that Black Bear will continue its practice of deducting the above-referenced prohibited costs in its calculation of royalties paid to the members of Subclass I after the date of final judgment in this case.

63.     LHB Ventures requests that the Court enter a declaratory judgment determining that on all future royalty payments to LHB Ventures and the other members of Subclass I, Black Bear is required to pay such royalties and overriding royalties without deducting the above-referenced prohibited costs.

## SUBCLASS II
## FACTUAL AND CLASS ALLEGATIONS

64.     As alleged *supra*, the WRPA imposes strict timeframes for the payment of oil and gas proceeds.

65.     Black Bear has consistently violated its obligations under the above-referenced statutory provisions by making late payments, or no payments, to persons owning royalty, overriding royalty, and other interests located in the State of Wyoming, without paying the

16

statutorily required eighteen percent per annum interest on such late payments, or otherwise not making any payment at all.

66.    LHB Ventures is legally entitled to a share of the proceeds derived from the sale of the oil, gas, or related hydrocarbons produced from numerous Wyoming oil and gas wells that are operated by Black Bear, and has received royalty and overriding royalty payments from Black Bear on the oil, gas, and related hydrocarbons produced and sold from such wells at various times between February 9, 2018 and the present.

67.    Black Bear has breached its statutory late payment interest obligations to LHB Ventures because Black Bear, on non-payments and late payments which Black Bear has made to LHB Ventures, Black Bear has failed to pay LHB Ventures the statutorily required eighteen percent per annum interest on all such late payments, including but not limited to payments that have been made on oil, gas, or related hydrocarbon sale proceeds received by Black Bear which are not "first sales," and which have been made more than 60 days after the calendar month within which such production is sold by Black Bear from wells in which LHB Ventures owns an interest.

68.    There is no provision in any of the instruments under which Black Bear pays royalties or overriding to LHB Ventures which contains "specific language" which expressly negates the application of the WRPA's strict payment deadlines.

69.    Black Bear is the lessee under numerous oil and gas leases with hundreds of lessors and overriding royalty interest owners which, like Black Bear's agreements with LHB Ventures, do not contain any specific language which negates the WRPA's strict payment deadlines.

70.    Pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), LHB Ventures brings this action on behalf of itself and the following subclass defined as follows:

> All non-excluded persons or entities who are legally entitled to a
> share of the proceeds derived from the sale of production by Black

Bear from any well producing oil, gas, or related hydrocarbons in the State of Wyoming who: (1) have received one or more late payments from Black Bear at any time since February 9, 2018, on oil, gas, and related hydrocarbons produced and sold by Black Bear from a Wyoming well; and (2) on any such late payments Black Bear has not paid such persons or entities interest at the statutory rate of eighteen percent per annum; **or** are legally entitled to a share of the proceeds derived from the sale of production by Black Bear from any well producing oil, gas, or related hydrocarbons in the State of Wyoming, and have not received payments from Black Bear after the WRPA's payment deadlines have lapsed.

Excluded from the Class are: (1) Black Bear, its affiliates, predecessors, employees, officers, and directors; and (2) agencies, departments, or instrumentalities of the United States of America.

(the "Black Bear Late Payment Subclass" or "Subclass II").

71.  Upon information and belief, there are more than 100 members of Subclass II, and joinder of such persons in this class action is therefore impracticable.

72.  There are questions of fact and law common to the claims of the members of Subclass II, which include:

a.  Whether Black Bear has made late payments to the members of Subclass II on Black Bear's production and sale of oil, gas, and related hydrocarbons from Wyoming wells in which Subclass II members own an interest, at any time since February 9, 2018;

b.  Whether, and to what extent, Black Bear has failed to pay Subclass II members the statutorily required eighteen percent per annum interest on late payments which Black Bear has made or owed to the Subclass II members;

c.  Whether Black Bear has failed to make any payment to the Subclass II members; and

d.  Whether Black Bear's failure to pay eighteen percent per annum interest to LHB Ventures and the other members of Subclass II on any such late payments or non-payments constitutes a violation of Wyo. Stat. Ann. § 30-5-303(a), for which LHB Ventures and the other members of Subclass II are entitled to compensation.

73.  LHB Ventures' claims against Black Bear are typical of the other Subclass II members' claims against Black Bear because each Subclass II member's late payment claim

against Black Bear is identical to LHB Ventures late payment claim against Black Bear.

74.     LHB Ventures will fairly and adequately protect the interests of Subclass II. LHB Ventures is represented by attorneys who are skilled and experienced in royalty underpayment and late payment class action litigation, and LHB Ventures does not have a conflict of interest with any other Subclass II member regarding the late payment claims at issue.

75.     The questions of fact and law which are common to the claims of the members of Subclass II against Black Bear predominate over any individual questions of fact or law which may affect only some members of Subclass II.

76.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

**SUBCLASS II**
**FIRST CLAIM FOR RELIEF**
**(Black Bear's Violation of §§ 301(a) and 303(a) of the WRPA)**

77.     The preceding allegations of this Class Action Complaint are fully incorporated by reference.

78.     Since February 9, 2018, Black Bear has made late payments to LHB Ventures and the other members of Subclass II, by making payments to LHB Ventures and the other Subclass II members which were either: (a) later than six months after the first day of the month following the date of Black Bear's first sale of oil, gas, or related hydrocarbons from a Wyoming well in which a Subclass II member owns an interest; and/or (b) for all oil, gas, or related hydrocarbons sales which were not Black Bear's first sales of oil, gas, or related hydrocarbons from a Wyoming well in which a Subclass II member owns an interest, later than sixty days after the end of the calendar month within which payment was received by Black Bear on its sale of oil, gas, or related hydrocarbons produced by Black Bear from a Wyoming well in which a Subclass II member owns an interest; and (c) with respect to any such late payments or non-payments made by Black Bear

to the members of Subclass II, Black Bear has not paid Subclass II members eighteen percent per annum interest, as statutorily required under Wyo. Stat. Ann. § 30-5-303(a).

79.    As a direct result of Black Bear's failure to pay LHB Ventures and the other Subclass II members eighteen percent per annum interest on the above-referenced late payments or non-payments, LHB Ventures and the other members of Subclass II have sustained substantial damages.

80.    Based upon Black Bear's failure to pay LHB Ventures and Subclass II members eighteen percent per annum interest on late payments or non-payments, as required under Wyo. Stat. Ann. § 30-5-303(a), LHB Ventures and the other members of Subclass II are entitled to an award of attorney's fees and costs from Black Bear, pursuant to Wyo. Stat. Ann. § 30-5-303(b).

## SECOND CLAIM FOR RELIEF
### (Declaratory Judgment)

81.    The preceding allegations of this Class Action Complaint are fully incorporated by reference.

82.    A controversy exists between LHB Ventures and the other members of Subclass II and Black Bear regarding Black Bear's obligation to pay the statutory interest on late payments pursuant to Wyo. Stat. Ann. § 30-5-303(a), on late payments made by Black Bear's after the date of final judgment in this case ("future late payments"), based upon the clear likelihood that Black Bear will continue its practice of not paying the members of Subclass II eighteen percent per annum interest on all late payments made by Black Bear after the date of final judgment in this case.

83.    LHB Ventures requests that the Court enter a declaratory judgment determining that on all future late payments made by Black Bear to LHB Ventures and the other members of

Subclass II, Black Bear is required to pay the statutorily required eighteen percent per annum interest, pursuant to Wyo. Stat. Ann. § 30-5-303(a).

<strong><u>GENERAL ALLEGATIONS RELATED TO<br>THE CONTRACTUAL RELATIONSHIP BETWEEN<br>SHELL TRADING AND FIRST INTERSTATE BANK.</u></strong>

84.    As alleged *supra*, Defendant Shell Trading entered into a Royalty Escrow Agreement with Defendant First Interstate Bank. Under the terms of the Royalty Escrow Agreement, Shell Trading agreed to "deposit or cause to be deposited in [an escrow account] all sums which it in good faith believes are owed by it or should be credited by it to the owner or owners of any and all working, royalty, or overriding royalty interest or any other right or interest in the mineral estate of producing properties covered by this Agreement, **which owner or interest has not been determined and confirmed by executed division order or similar document or make a claim for underpayment.**" (emphasis added).

85.    The Royalty Escrow Agreement further provides that First Interstate Bank "shall be substituted in place and stead of [Shell Trading] for any orders or claims which may be asserted against the holder of any such funds to satisfy any alleged claims against any such owner or ownership interests."

86.    On information and belief, at various times since February 9, 2018, Shell Trading deposited proceeds owed to LHB Ventures and other members of Subclass III and Subclass IV, as defined herein, into the escrow account maintained by First Interstate Bank pursuant to the Royalty Escrow Account without the existence of a "good faith" dispute regarding the person or entity entitled to such proceeds.

87.    Subsequent to the deposit of such proceeds in an escrow account, and at the direction of Shell Trading, First Interstate Bank would later remit the proceeds to LHB Ventures

and the other members of Subclasses III and IV, as defined herein, without the requisite 18 percent per annum interest as required under the WRPA, despite the lack of a "good faith" dispute as to the person legally entitled to such funds.

88.    Under Wyo. Stat. Ann. § 30-5-301(a), First Interstate Bank is a party who assumed the payment obligations for such funds deposited into the escrow account by Shell Trading

89.    Because Shell Trading directed the timing and manner in which First Interstate Bank remitted the escrowed proceeds to the members of Subclass III and Subclass IV, as defined herein, Shell Trading and First Interstate Bank are jointly and severally liable for damages resulting from their breaches of the WRPA's payment obligations which are associated with such escrowed proceeds.

**SUBCLASS III**
**FACTUAL AND CLASS ALLEGATIONS**

**A. *SHELL TRADING'S AND FIRST INTERSTATE BANK'S UNDERPAYMENT OF OIL ROYALTIES UNDER THE WRPA.***

90.    There is no provision in any of the instruments under which Shell Trading and First Interstate Bank pays royalties or overriding to LHB Ventures which contains "specific language" which expressly negates the application of the WRPA's royalty and overriding royalty payment requirements.

91.    Under the WRPA, Shell Trading and First Interstate Bank are legally obligated to calculate and pay oil royalties and overriding royalties associated with Shell Trading Wells to LHB Ventures, free of the costs of production, as defined in Wyo. Stat. Ann. § 30-5-304(a)(vi).

92.    On information and belief, at various times since October 2021, Shell Trading and First Interstate Bank have underpaid LHB Ventures the amounts of oil royalty and overriding royalties owed to it based upon Shell Trading's and First Interstate Bank's unlawful deduction of

the costs of gathering, separating, storing, and transporting the oil produced from the Shell Trading Wells to the storage tanks, and other costs of production as defined in the WRPA.

93.     Although the check stubs prepared by Shell Trading and First Interstate Bank and sent to LHB Ventures do not expressly reflect Shell Trading's and First Interstate Bank's deduction of the prohibited costs, the Energy Information Administration publishes a monthly index for "Wyoming Crude Oil First Purchase Index Price" which reflects the weighted average wellhead price for oil produced and sold in the State of Wyoming during a given month.

94.     The price used by Shell Trading and First Interstate Bank in the calculation and payment of oil royalties and overriding royalties owed to LHB Ventures is consistently less than the posted "Wyoming Crude Oil First Purchase Index Price."

95.     On information and belief, this discrepancy occurs because Shell Trading and First Interstate Bank have improperly deducted prohibited costs in its calculation and payment of oil royalties and overriding royalties owed to LHB Ventures and the other members of Subclass III, as defined herein.

96.     Additionally, on payments LHB Ventures and the other Subclass III members received directly from First Interstate Bank, First Interstate Bank improperly deducted certain escrow fees from such payments in violation of the WRPA.

97.     Shell Trading is the lessee under numerous oil and gas leases with hundreds of lessors and overriding royalty interest owners which, like Shell Trading's agreements with LHB Ventures, do not contain any specific language expressly permitting Shell Trading to deduct the above-referenced prohibited costs in its calculation of royalties and overriding royalties paid to those persons legally entitled to such proceeds.

98.     On information and belief, Shell Trading and First Interstate Bank also deducted

the above-described costs in the calculation and payment of oil royalties and oil overriding royalties owed to the other members of Subclass III.

**B.  SHELL TRADING'S AND FIRST INTERSTATE BANK'S FAILURE TO DISCLOSE ITS IMPROPER DEDUCTIONS UNDER THE WRPA.**

99.    The WRPA also obligates Shell Trading and First Interstate Bank to provide certain information to LHB Ventures and the other Subclass III members whenever Shell Trading and First Interstate Bank make a royalty or overriding royalty payment to them. Specifically, Section 30-5-305(b)(vi) of the WRPA obligates Shell Trading and First Interstate Bank to provide an itemized list of any deductions or adjustments to LHB Ventures' and the other Subclass III members' payments.

100.    Shell Trading and First Interstate Bank use a royalty payment statement (a/k/a "check stub") form that is common to LHB Ventures and all of the Subclass III members. The check stubs prepared and sent by Shell Trading and First Interstate Bank to LHB Ventures and the other Subclass III members in regard to Shell Trading's and First Interstate Bank's royalty and overriding royalty payments on oil produced in Wyoming have not included or labeled all of the deductions or adjustments that Shell Trading and First Interstate Bank have made to LHB Ventures' and the other Subclass III members' royalty and overriding royalty payments. For example, and without limitation, Shell Trading and First Interstate Bank have failed to disclose on its check stubs that Shell Trading and First Interstate Bank have deducted certain "costs of production" in calculating payment to LHB Ventures and the other Subclass III members. Shell Trading and First Interstate Bank have also failed to provide Subclass III members' share of the total value of oil sales prior to the deduction of prohibited costs.

101.    Shell Trading and First Interstate Bank acts and omissions in regard to the information it provides on its check stubs constitute repeated violations of W.S. §30-5-305(b).

24

Pursuant to W.S. §30-5-305(c), LHB Ventures and each of the Subclass III members are entitled to recover from Shell Trading and First Interstate Bank $100.00 per month for each month that a complete reporting was not provided to them.

102.    Pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), LHB Ventures brings this action on behalf of itself and the following subclass defined as follows:

> All non-excluded persons or entities who: (1) are legally entitled to proceeds attributable to oil produced from any well located in the State of Wyoming in which Shell Trading or First Interstate Bank have assumed the obligation to remit payment under any legal arrangement, pursuant to an oil and gas lease or overriding royalty agreement which does not contain specific language expressly permitting Shell Trading or First Interstate Bank to deduct costs of production, as defined in the WRPA; (2) at any time since February 9, 2018, have been paid royalties by Shell Trading or First Interstate Bank associated with oil produced in the State of Wyoming in which Shell Trading or First Interstate Bank have deducted any of the above-referenced costs of production in its calculation of such royalties; and (3) whose check stubs did not reflect the deduction of costs of production in the calculation and payment of oil royalties and oil overriding royalties
>
> Excluded from the Class are: (1) Shell Trading, its affiliates, predecessors, employees, officers, and directors; (2) First Interstate Bank, its affiliates, employees, officers, and directors, and (3) agencies, departments, or instrumentalities of the United States of America.

(the "Shell Trading and First Interstate Bank Deductions Subclass" or "Subclass III").

103.    On information and belief, there are more than 100 members of Subclass III, and joinder of such persons in this class action is therefore impractical.

104.    There are questions of fact and law common to the claims of the members of Subclass III, which include:

> a.    Whether Shell Trading and First Interstate Bank have deducted one or more of the above-referenced prohibited costs of production in its calculation of royalties and overriding royalties paid to the members of Subclass III;

b.   Whether Shell Trading and First Interstate Bank have breached their royalty and overriding royalty payment obligations to the members of Subclass III by deducting one or more of the above-referenced prohibited costs of production in its calculation of royalties and overriding royalties paid to the members of Subclass III;

c.   Whether Shell Trading's and First Interstate Bank's deduction of any of the above-referenced prohibited costs in its calculation of royalties paid to the members of the Subclass III is prohibited under the express provisions of Wyo. Stat. Ann. § 30-5-304(a)(v), (a)(vi), and (a)(vii), which are incorporated into the oil and gas leases and overriding royalty agreements at issue;

d.   Whether Shell Trading's and First Interstate Bank's uniform policies and practices relating to the preparation of royalty and overriding royalty payment statements (a/k/a check stubs) sent to LHB Ventures and the other members of Subclass III constitute a violation of Section 30-5-305(b) of the WRPA; and

e.   Whether Shell Trading and First Interstate Bank breached their obligations under Section 30-5-303(c) of the WRPA by not properly including and labeling, on Shell Trading's and First Interstate Bank's check stubs, all deductions taken from LHB Ventures and the other Subclass III members' royalty and overriding royalty payments.

105.   LHB Ventures statutory WRPA claims against Shell Trading and First Interstate Bank are typical of the other members of Subclass III's claims against Shell Trading and First Interstate Bank, because each Subclass III member's claim against Shell Trading and First Interstate Bank is identical to LHB Ventures' claim against Shell Trading and First Interstate Bank.

106.   LHB Ventures will fairly and adequately protect the interests of the members of Subclass III. LHB Ventures is represented by attorneys who are skilled and experienced in royalty underpayment and late payment class action litigation, and LHB Ventures does not have a conflict of interest with any other member of Subclass III regarding the claims at issue.

107.   The questions of fact and law which are common to the claims of the members of Subclass III predominate over any questions of fact or law which may affect only individual members of Subclass III.

108.   A class action is superior to other available methods for the fair and efficient

26

adjudication of this controversy.

**SUBCLASS III**
**FIRST CLAIM FOR RELIEF**
**(Shell Trading's and First Interstate Bank's Breach of its Royalty**
**and Overriding Royalty Payment Obligations Under The Wyoming Royalty Payment Act)**

107.    The preceding allegations of this Class Action Complaint are fully incorporated by reference.

108.    At various times since February 9, 2018, Shell Trading and First Interstate Bank have  breached their royalty and overriding royalty oil payment obligations to LHB Ventures and the other members of Subclass III by deducting one or more of the following costs in its calculation of oil royalties and overriding royalties paid to the LHB Ventures and the other members of Subclass III: gathering, separating, trucking, and transporting the oil to the storage tanks, and improper escrow fees, and other costs of production as defined under the WRPA.

109.    As a direct result of Shell Trading's and First Interstate Bank's breach of their oil royalty and oil overriding royalty payment obligations, as described above, LHB Ventures and the other members of Subclass III have sustained substantial damages.

110.    Based upon Shell Trading's and First Interstate Bank's failure to pay LHB Ventures and the other members of Subclass III the correct amount of oil royalties and overriding royalties which they are owed, LHB Ventures and the other members of Subclass III are entitled to recover eighteen percent per annum on the underpaid royalties, pursuant to Wyo. Stat. Ann. §§ 30-5-301(a) and 30-5-303(a), and are also entitled to recover reasonable attorneys' fees pursuant to Wyo. Stat. Ann. § 30-5-303(b).

**SECOND CLAIM FOR RELIEF**
**(Shell Trading's and First Interstate Bank's Failure to Disclose its**
**Deduction of Costs of Production Under Section 30-5-305)**

111.    The preceding allegations of this Class Action Complaint are fully incorporated by reference.

112.    Shell Trading and First Interstate Bank have knowingly charged "costs of production" to LHB Ventures and the other members of Subclass III in the calculation and payment of oil royalties in violation of Section 30-5-305 WRPA.

113.    Shell Trading and First Interstate Bank have knowingly violated the WRPA by failing to provide to LHB Ventures and the other members of Subclass III a true and complete disclosure of information as required by Section 30-5-305(b) of the WRPA.

114.    LHB Ventures and the other members of Subclass III have been damaged as a result thereof and are entitled to statutory payments in the amount of $100.00 per month for each month that complete reporting was not provided by Shell Trading and First Interstate Bank, as provided in Section 30-5-303(c), and any other relief deemed appropriate by the Court.

## THIRD CLAIM FOR RELIEF
### (Declaratory Judgment)

115.    The preceding allegations of this Class Action Complaint are fully incorporated by reference.

116.    A controversy exists between LHB Ventures and the other members of Subclass III and Shell Trading and First Interstate Bank regarding Shell Trading's and First Interstate Bank's obligation to pay oil royalties and overriding royalties to LHB Ventures and the other members of Subclass III without deducting the above-referenced prohibited costs on future royalty payments made by Shell Trading and First Interstate Bank after the date of final judgment in this case ("future royalty payments"), based upon the clear likelihood that Shell Trading and First Interstate Bank will continue its practice of deducting the above-referenced prohibited costs in its calculation of royalties paid to the members of Subclass III after the date of final judgment in this case.

117.    LHB Ventures requests that the Court enter a declaratory judgment determining that on all future royalty payments to LHB Ventures and the other members of Subclass III, Shell Trading and First Interstate Bank are required to pay such royalties and overriding royalties without deducting the above-referenced prohibited costs.

## SUBCLASS IV FACTUAL
## AND CLASS ALLEGATIONS

118.    As alleged *supra*, the WRPA imposes strict timeframes for the payment of oil and gas proceeds:

119.    Shell Trading and First Interstate Bank have consistently violated their obligations under the above-referenced statutory provisions by making late payments, or no payments, to persons owning royalty, overriding royalty, and other mineral interests located in the State of Wyoming, without paying the statutorily required eighteen percent per annum interest on such late payments, or otherwise not making any payment at all.

120.    LHB Ventures is legally entitled to a share of the proceeds derived from the sale of the oil produced from numerous Wyoming oil and gas wells in which Shell Trading and First Interstate Bank have assumed the payment obligations under the WRPA, and has received royalty and overriding royalty payments from Shell Trading and First Interstate Bank on the oil produced and sold from such wells at various times between February 9, 2018 and the present.

121.    Shell Trading and First Interstate Bank have breached their statutory late payment interest obligations to LHB Ventures because Shell Trading and First Interstate Bank, on late payments which Shell Trading and First Interstate Bank have made to LHB Ventures, have failed to pay LHB Ventures the statutorily required eighteen percent per annum interest on all such late payments, including but not limited to payments that have been made on oil sales proceeds received by Shell Trading and First Interstate Bank which are not "first sales," and which have

been made more than 60 days after the calendar month within which such production is sold by Shell Trading and First Interstate Bank from wells in which LHB Ventures owns an interest.

122.    There is no provision in any of the instruments under which Shell Trading and First Interstate Bank pay royalties, overriding royalties, or other mineral interests to LHB Ventures which contains "specific language" which expressly negates the application of the WRPA's strict payment deadlines.

123.    Shell Trading is the lessee under numerous oil and gas leases with hundreds of lessors and overriding royalty interest owners which, like Shell Trading's agreements with LHB Ventures, do not contain any specific language which negates the WRPA's strict payment deadlines.

124.    Pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), LHB Ventures brings this action on behalf of itself, and the following subclass defined as follows:

> All non-excluded persons or entities who are legally entitled to a share of the proceeds derived from the sale of production from wells located in the State of Wyoming under which Shell Trading or First Interstate Bank have assumed the payment obligations who: (1) have received one or more late payments from Shell Trading or First Interstate Bank at any time since February 9, 2018; and (2) on any such late payments Shell Trading or First Interstate Bank have not paid such persons or entities interest at the statutory rate of eighteen percent per annum; **or** are legally entitled to a share of the proceeds derived from the sale of production from any well producing oil, gas, or related hydrocarbons in the State of Wyoming under which Shell Trading or First Interstate Bank have assumed the payment obligations, and have not received payments from Shell Trading or First Interstate Bank after the WRPA's payment deadlines have lapsed.

> Excluded from the Class are: (1) Shell Trading, its affiliates, predecessors, employees, officers, and directors; (2) First Interstate Bank, its affiliates, employees, officers, and directors, and (3) agencies, departments, or instrumentalities of the United States of America.

(the "Shell Trading and First Interstate Bank Late Payment Subclass" or "Subclass IV").

125. Upon information and belief, there are more than 100 members of Subclass IV, and joinder of such persons in this class action is therefore impracticable.

126. There are questions of fact and law common to the claims of the members of Subclass IV, which include:

a. Whether Shell Trading or First Interstate Bank have made late payments to the members of Subclass IV on oil, gas, and related hydrocarbons produced from Wyoming wells under which Shell Trading and First Interstate Bank have assumed the payment obligations in which the Subclass IV members own an interest, at any time since February 9, 2018;

b. Whether, and to what extent, Shell Trading and First Interstate Bank have failed to pay the members of Subclass IV the statutorily required eighteen percent per annum interest on late payments which Shell Trading and First Interstate Bank made to the Subclass IV members;

c. Whether Shell Trading and First Interstate Bank have failed to make any payment to the members of Subclass IV; and

d. Whether Shell Trading's and First Interstate Bank's failure to pay eighteen percent per annum interest to LHB Ventures and the other members of Subclass IV on any such late payments constitutes a violation of Wyo. Stat. Ann. § 30-5-303(a), for which LHB Ventures and the other members of Subclass IV are entitled to compensation.

127. LHB Ventures' claims against Shell Trading and First Interstate Bank are typical of the other Subclass IV members' claims against Shell Trading and First Interstate Bank because each Subclass IV member's late payment claim against Shell Trading and First Interstate Bank is identical to LHB Ventures late payment claim against Shell Trading and First Interstate Bank.

128. LHB Ventures will fairly and adequately protect the interests of the Subclass IV members. LHB Ventures is represented by attorneys who are skilled and experienced in royalty underpayment and late payment class action litigation, and LHB Ventures does not have a conflict of interest with any other Subclass IV member regarding the late payment claims at issue.

129.    The questions of fact and law which are common to the claims of the members of Subclass IV against Shell Trading and First Interstate Bank predominate over any individual questions of fact or law which may affect only some members of Subclass IV.

130.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## SUBCLASS IV
## FIRST CLAIM FOR RELIEF

**(Shell Trading and First Interstate Bank's Violation of §§ 301(a) and 303(a) of the WRPA)**

131.    The preceding allegations of this Class Action Complaint are fully incorporated by reference.

132.    Since February 9, 2018, Shell Trading and First Interstate Bank have made late payments or non payments to LHB Ventures and the other members of Subclass IV, by making payments to LHB Ventures and the other Subclass IV members which were either: (a) later than six months after the first day of the month following the date of Shell Trading and First Interstate Bank's first sale of oil, gas, and related hydrocarbons from a Wyoming well in which a Subclass IV member owned an interest; and/or (b) for all oil, gas, and related hydrocarbons sales which were not Shell Trading and First Interstate Bank's first sales of oil, gas, and related hydrocarbons from a Wyoming well in which a Subclass IV member owns an interest, later than sixty days after the end of the calendar month within which payment was received by Shell Trading and First Interstate Bank on its sale of oil, gas, and related hydrocarbons produced by Shell Trading and First Interstate Bank from a Wyoming well in which a Subclass IV member owned an interest; and (c) with respect to any such late payments or non-payments made by Shell Trading and First Interstate Bank to the members of Subclass IV, Shell Trading and First Interstate Bank have not

paid the Subclass IV members eighteen percent per annum interest, as statutorily required under Wyo. Stat. Ann. § 30-5-303(a).

133.    As a direct result of Shell Trading and First Interstate Bank's failure to pay LHB Ventures and the other Subclass IV members eighteen percent per annum interest on the above-referenced late payments or non-payments, LHB Ventures and the other members of Subclass IV have sustained substantial damages.

134.    Based upon Shell Trading and First Interstate Bank's failure to pay LHB Ventures and the Subclass IV members eighteen percent per annum interest on late payments, as required under Wyo. Stat. Ann. § 30-5-303(a), LHB Ventures and the other members of Subclass IV are entitled to an award of attorney's fees and costs from Shell Trading and First Interstate Bank, pursuant to Wyo. Stat. Ann. § 30-5-303(b).

## SECOND CLAIM FOR RELIEF
### (Declaratory Judgment)

135.    The preceding allegations of this Class Action Complaint are fully incorporated by reference.

136.    A controversy exists between LHB Ventures and the other members of Subclass IV and Shell Trading and First Interstate Bank regarding Shell Trading and First Interstate Bank's obligation to pay the statutory interest on late payments pursuant to Wyo. Stat. Ann. § 30-5-303(a), on late payments made by Shell Trading and First Interstate Bank after the date of final judgment in this case ("future late payments"), based upon the clear likelihood that Shell Trading and First Interstate Bank will continue its practice of not paying the members of Subclass IV eighteen percent per annum interest on all late payments made by Shell Trading and First Interstate Bank after the date of final judgment in this case.

33

137.    LHB Ventures requests that the Court enter a declaratory judgment determining that on all future late payments made by Shell Trading and First Interstate Bank to LHB Ventures and the other members of Subclass IV, Shell Trading and First Interstate Bank are required to pay the statutorily required eighteen percent per annum interest, pursuant to Wyo. Stat. Ann. § 30-5-303(a).

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for the following relief:

A.    An Order determining that the claims asserted by LHB Ventures on behalf of the four above-defined Subclasses should be certified as a class action pursuant to Fed. R. Civ. P. 23(b)(3), that LHB Ventures be appointed as the Class Representative for the defined Subclasses, and that the attorneys for LHB Ventures be appointed as Class Counsel for the defined Subclasses;

B.    A judgment in favor of Subclass I and Subclass III on their royalty underpayment claims against Defendants, including the amount of $100 per month for each month that a complete and accurate reporting was not provided by Defendants for all royalty underpayments made by Defendants since February 9, 2018 as provided in Wyo. Stat. Ann. § 30-5-305(c), plus applicable eighteen percent per annum statutory interest on all underpaid royalties;

C.    A judgment in favor of Subclass II and Subclass IV against Defendants for the full amount of unpaid eighteen percent per annum interest on late payments, or unpaid payments, made by Defendants to the members of these two Subclasses since February 9, 2018;

D.    A declaratory judgment declaring that Defendants are required to pay all future royalties to LHB Ventures and the other members of Subclass I and Subclass III, without deduction of any of the above-referenced prohibited costs.

E.      A declaratory judgment declaring that Defendants are required by law to pay eighteen percent statutory interest on all future late payments to LHB Ventures, Subclass II, and Subclass IV;

F.      An award of attorney's fees and costs to the members of the four above-defined Subclasses pursuant to Wyo. Stat. Ann. § 30-5-303(b);

G.      Such costs and other relief as this Court deems appropriate.

## DEMAND FOR JURY TRIAL

LHB Ventures and the proposed Class members demand a jury trial on all issues so triable.

DATED:          February 9, 2026

                                        */s/ Stephen R. Winship*
                                        Stephen R. Winship
                                        (Wyoming State Bar No. 5-2093)
                                        WINSHIP & WINSHIP, P.C.
                                        145 South Durbin Street, Suite 201
                                        Casper, WY 82601
                                        (307)234-8991
                                        steve@winshipandwinship.co

                                        -and-

                                        George A. Barton (to be admitted PHV)
                                        Stacy A. Burrows (to be admitted PHV)
                                        Seth K. Jones (to be admitted PHV)
                                        BARTON AND BURROWS, LLC
                                        5201 Johnson Drive, Ste. 110
                                        Mission, KS 66205
                                        (913) 563-6250
                                        George@bartonburrows.com
                                        Stacy@bartonburrows.com
                                        Seth@bartonburrows.com

                                        *Attorneys for Plaintiff LHB Ventures,*
                                        *on behalf of itself and the proposed*
                                        *Subclasses of similarly situated persons*